**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
MALCOLM O. ASHLEY,              :
                                :
          Plaintiff,            :
                                :
          v.                    :  Civil No. 3:17-cv-724(AWT)
                                :
CITY OF BRIDGEPORT; LT. RONALD  :
MERCADO; OFFICER RODERICK DODA; :
OFFICER MARIE CETTI; and ST.    :
VINCENT'S MEDICAL CENTER,       :
                                :
          Defendants.           :
------------------------------- x
```

**RULING ON MOTION IN LIMINE TO EXCLUDE**
**MEDICAL RECORDS AND EXPERT REPORT AND TESTIMONY**

Plaintiff Malcolm O. Ashley moves <u>in limine</u> to exclude all evidence related to his medical records and the expert report and testimony of Joel R. Milzoff, Ph.D.  For the reasons set forth below, his motion is being denied.

**I.   BACKGROUND**

This case arises out of an incident on April 4, 2015, during which Ashley was taken by Ambulance to St. Vincent's Medical Center ("St. Vincent's") from the Bridgeport police station.  The parties disagree about whether Ashley's behavior was erratic and combative, and about whether taking him to the hospital and providing him psychiatric treatment without his consent was justified.  The defendants have disclosed an expert report by Dr. Milzoff regarding the opinions he will give with

respect to the results of toxicology tests and the consistency of those results with reports by the defendants and by medical professionals concerning Ashley's behavior that day.

## II.  LEGAL STANDARD

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . ."  Fed. R. Evid. 104(a).  "Under [Rule 104], the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."  Fed. R. Evid. 702 advisory committee's note to 2000 Amendment (citing Bourjaily v. United States, 483 U.S. 171 (1987)); see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 n.10 (1993) (citing Bourjaily for the proposition that "[p]reliminary questions concerning the qualification of a person to be a witness . . . should be established by a preponderance of proof").

Federal Rule of Evidence 702 sets forth the standard to be used by the court in evaluating the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data,

> (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has
> applied the principles and methods reliably to the
> facts of the case.

Fed. R. Evid. 702.

In Daubert, the Supreme Court held that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. at 597.  With respect to reliability, the Supreme Court identified four factors that, while not definitive, are ones a district court might consider: "whether a theory or technique has been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation."  Ruggiero v. Warner-Lambert, 424 F.3d 249, 253 (2d Cir. 2005) (citing Nimely v. City of N.Y., 414 F.3d 381, 397 (2d Cir. 2005)).  Expert testimony is relevant only if it will assist the jury.  See Hill v. City of N.Y., No. 03-CV-1283 (ARR)(KAM), 2007 WL 1989261, at *5 (E.D.N.Y. July 5, 2007).  Expert testimony is not relevant if it is directed towards lay matters that the jury can understand on its own.  See Rieger v. Orlor, Inc., 427 F. Supp. 2d 99, 103 (D. Conn. 2006).

Whether the expert bases testimony on professional studies or personal experience, he must employ "the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). In Kumho, the Court emphasized the relevance/reliability standard in determining the admissibility of expert testimony, stating that Rule 702 "establishes a standard of evidentiary reliability . . . requir[ing] a valid connection to the pertinent inquiry as a precondition to admissibility . . . [and] a reliable basis in the knowledge and experience of the relevant discipline." Id. at 149 (internal quotations and citations omitted).

A court must undertake "a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." Id. In Daubert, the Court "expressed its faith in the power of the adversary system to test shaky but admissible evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable." Borawick v. Shay, 68 F.3d 597, 610 (2d

Cir. 1995) (internal citation and quotation omitted).  But "[w]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony."  Amorgianos, 303 F.3d at 266.

The Second Circuit has noted "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations."  Nimely, 414 F.3d at 397 (citing Daubert, 509 U.S. at 595).  Rule 403 provides that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading a jury."  Fed. R. Evid. 403.

**III. DISCUSSION**

Dr. Milzoff's report begins by describing the factual background for his opinions.  That factual background includes reports by the Bridgeport Police Department, American Medical Response, and medical professionals at St. Vincent's that Ashley: "refused to cooperate in revealing the subject of his concern"; "seemed [to] be disoriented to time"; was "oriented as to person and place but not oriented to time and becoming lethargic"; was "very angry, shouting, upset about having been brought to the hospital"; and "was confused as to the day of the week and angry when corrected."  (Defs.' Obj. to Pl.'s Mot. in

Limine, Ex. A, at 2-3, ECF No. 261-1.)  The report quotes a
doctor's notes as stating that "[Ashley's] urine drug screen was
positive for cannabinoids and PCP."  (Id. at 4.)

    With that factual background, Dr. Milzoff's report offers
various opinions.  Dr. Milzoff describes PCP and the ability to
detect PCP in a person using a particular test.  Dr. Milzoff
describes the typical effects of PCP on a person.  Dr. Milzoff
describes what is indicated by a positive test for Cannabinoids
and the typical effects of Cannabinoids on a person.  Also, Dr.
Milzoff describes the medicines administered by St. Vincent's to
the plaintiff.  Finally, Dr. Milzoff opines:

> Mr. Ashley's behaviors including combativeness,
> disorientation as to time and lethargy or drowsiness
> are consistent with the consumption of the drug
> Phencyclidine and are supported by the detection of
> the drug in his urine.

(Id. at 5.)

    Ashley argues that his medical records and Dr. Milzoff's
report and testimony should be excluded on three grounds.[1]

    First, Ashley argues that all of the medical records from
his treatment from April 4-5, 2015, as well as Dr. Milzoff's
report and testimony, should be excluded because the medical

---

[1] Because he is proceeding pro se, the court reads Ashley's
papers "liberally and interpret[s] [them] 'to raise the
strongest arguments that they suggest.'"  Triestman v. Fed.
Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.
2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir.
2006)).

records (on which Milzoff relies) "were disclosed illegally
without [Ashley's] 'informed consent.'" (Mem. of Law Supp.
Pl.'s Mot. in Limine 4, ECF No. 257-1.)  But the defendants have
produced waivers signed by Ashley on February 25, 2019 with
respect to his medical records held by American Medical Response
and St. Vincent's.  The waivers specifically stated that Ashley
authorized American Medical Response and St. Vincent's to
release his medical records to the City of Bridgeport, Office of
the City Attorney in connection with civil litigation.  The
waivers both covered records related to treatment provided on
April 4-5, 2015.  Therefore, this argument fails.

    Second, Ashley argues that all medical records from the
date in question should be excluded as they are "fruits from the
illegal violation of Plaintiff's 4th Amendment Rights of the
U.S. Constitution" because they were the result of an
unconstitutional action because he did not consent to the
medical procedures at issue.  (Evid. Rebuttal to Defs.' Opp'n to
Pl.'s Mot. in Limine ("Pl.'s Reply") at 13, ECF No. 266.)
Ashley appears to be invoking the exclusionary rule, pursuant to
which evidence obtained by means of unconstitutional searches
and seizures can be suppressed in criminal trials.  See
generally Segura v. United States, 468 U.S. 796, 804 (1984).
But the exclusionary rule does not apply in civil actions

-7-

brought pursuant to § 1983.  See <u>Townes v. City of N.Y.</u>, 176 F.3d 138, 146 (2d Cir. 1999).  Therefore, this argument fails.

Third, Ashley moves to exclude Dr. Milzoff's testimony and report under Federal Rules of Evidence 401, 702, and 403.[2] Ashley contends that Dr. Milzoff "is not competent to testify on the medical/behavioral condition of the plaintiff on 4 April 2015 as [he] is neither a medical doctor nor medical psychiatrist."  (Mem. of Law Supp. Pl.'s Mot. in Limine 1-2.)

## A.  Federal Rule of Evidence 401

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  As explained by the defendants, Dr. Milzoff's opinion that "Ashley's behaviors including combativeness, disorientation as to time and lethargy or drowsiness are consistent with the consumption of the drug Phencyclidine and are supported by the detection of the drug in his urine" has a tendency to make it more probable that Ashley's

---

[2] Ashley also cites Federal Rules of Evidence 806 and 901. With respect to Rule 806, Ashley states: "Further barred as genuine, are the statements by Ryan Doss, MD . . . who presented a proselytized, plagiarized, statement, in the form of a medical record, based wholly on a PEER report, drafted by defendant Doda."  (Pl.'s Reply at 13.)  But Rule 806 merely provides a basis to attack the credibility of the declarant of an otherwise-admitted hearsay statement.  It is inapplicable here. With respect to Rule 901, Ashley does not explain what evidence has not been authenticated.

behavior included combativeness, disorientation as to time, and lethargy or drowsiness.  The facts concerning Ashley's behavior on the date in question are of consequence here because they go to whether the defendants' actions were legally justified.  Dr. Milzoff's expert report is therefore relevant.

**B.   Federal Rule of Evidence 702**

Ashley argues that Dr. Milzoff is "not competent to testify on the medical/behavioral condition of the plaintiff on 4 April 2015 as Milzoff is neither a medical doctor nor medical psychiatrist."  (Mem. of Law Supp. Pl.'s Mot. in Limine 1-2.) He further argues that Dr. Milzoff is "woefully unqualified to testify on human 'behavior' given the specific, complex medical circumstances" of this case.  (Id. at 5.)  Ashley reasons: "Dr. Milzoff has absolutely no human medical scientific training, nor any experience in assessing 'real time' toxicology impact on human behavior and human physiologic responses," and is therefore unqualified "to render any medical expert opinion on the complex medical issues of this case."  (Pl.'s Reply at 4.)

But Dr. Milzoff is not offering an expert opinion about the condition of the plaintiff on the day in question, or as to how Ashley actually behaved.  Rather, Dr. Milzoff opines only about the consistency of certain behavior--which behavior would have to be established by other evidence--with the generally understood effects on a person of the drugs shown in the

toxicology results.  As a forensic toxicologist, he is qualified to testify on that subject.  The jury will be given an instruction to follow in the event that it concludes that Ashley's behavior did not include combativeness, disorientation as to time, and lethargy or drowsiness.

The other requirements of Rule 702 are also satisfied. First, Dr. Milzoff's testimony will help the trier of fact to determine a fact in issue.  A fact in issue here is what Ashley's behavior was on April 4, 2015.  Dr. Milzoff's expert testimony that Ashley's reported behavior on that day are consistent with the typical effects of toxicities detected in Ashley's system will be helpful in resolving that issue of fact.

Second, Dr. Milzoff's testimony is based on sufficient facts or data.  Dr. Milzoff relied on toxicology testing by St. Vincent's as well as reports from the defendant officers and the medical professionals involved regarding Ashley's behavior and medical treatment.  Ashley argues that the facts and data are insufficient because: (1) Milzoff's report does not include the fact that some of the defendant officers reported smelling alcohol on his breath; and (2) it does not consider the video evidence from the Bridgeport police station, which Ashley contends shows that his behavior was not as the defendant officers and medical professionals described.  However, with respect to the reports of the smell of alcohol, the toxicology

results did not show alcohol in Ashley's system, so it is reasonable that Dr. Milzoff--who is testifying as a forensic toxicologist--does not opine on the effect of alcohol on a person where there was no toxicological evidence of alcohol. With respect to the video evidence, it is not necessary for Dr. Milzoff to consider this additional evidence because he is not giving an opinion that Ashley actually behaved in a certain manner.

Finally, there appears to be no dispute that Dr. Milzoff's expert opinions are the "product of reliable principles and methods" and that he "reliably applied the principles and methods to the facts of the case." Id.  In any event, it appears to the court that this requirement is satisfied.

Therefore, Dr. Milzoff's testimony is admissible under Rule 702.

### C.  Federal Rule of Evidence 403

Rule 403 does not require excluding this evidence.  Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the

judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." <u>Daubert</u>, 509 U.S. at 595. Ashley contends that there is a significant danger that Dr. Milzoff's report and testimony would confuse the jury.  Ashley argues that "technical medical evidence historically . . . fits this description nexus to a lay person jury."  (Mem. of Law Supp. Pl.'s Mot. in Limine 4.)

But the evidence in question is not technical medical evidence, <u>e.g.</u> how the drugs at issue affect neurotransmitters in the brain, but if it were it would be precisely the type of evidence for which the assistance of an expert would be helpful.

In any event, the probative value of this evidence is not substantially outweighed by the risk of confusing the jury.  A key question of fact is how did Ashley behave on April 4, 2015. Dr. Milzoff's testimony that Ashley's reported behavior is consistent with the toxicology report is thus highly probative of a key issue in the case.  On the other hand, the court cannot discern the potential for confusion resulting from testimony that certain behavior is consistent with having taken a particular drug.

**IV.  CONCLUSION**

For the reasons set forth above, the Plaintiff's Motion in Limine to Exclude Testimony by Defendants' Expert Witness and to

Exclude Evidence of Plaintiff's Medical and Pharma Treatments (ECF No. 257) is hereby DENIED.

It is so ordered.

Dated this 22nd day of July 2020, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
